# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARIO EMMANUEL JAMES,**

    **Petitioner,**

    v.            Case No. 15-CV-717

**DON STRAHOTA,** [1]

    **Respondent.**

## ORDER

On June 15, 2015, Mario Emmanuel James ("James") filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) Both parties consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 9) and the matter is now ready for resolution.

**I.  Background**

On January 27, 2011, John Correa ("Correa"), his girlfriend Destiny Bump ("Bump"), and his brother Pedro Correa ("Pedro") were at Correa's Milwaukee residence watching television. (ECF No. 13-7 at 69-71.) Upon hearing a knock at the

---

[1] Records of the Wisconsin Department of Corrections state that petitioner Mario Emmanuel James is currently incarcerated at New Lisbon Correctional Institution, http://offender.doc.state.wi.us/lop (last visited Dec. 7, 2016), and the warden of that institution is Don Strahota, http://doc.wi.gov/families-visitors/find-facility/new-lisbon-correctional-institution (last visited Dec. 7, 2016). Therefore, pursuant to petitioner's motion (ECF No. 22) and Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

residence's back door, Bump went to answer. (ECF No. 13-7 at 71-72.) At the door a male voice stated, "It's Darryl." (ECF No. 13-7 at 73.) Having a brother named Darryl, Bump unlocked the door, turned her back, and walked back toward the living room. (ECF No. 13-7 at 102.) An intruder grabbed Bump's hair, put a gun to her head, and forced her to the floor. (ECF No. 13-7 at 73, 103.) Two additional intruders entered Correa's apartment. (ECF No. 13-7 at 74.)

One intruder, later identified as James, entered the living room with a gun drawn. (ECF No. 13-7 at 75.) He directed Correa to the ground and asked him "where the stuff was at." (ECF No. 13-7 at 76.) Correa directed James to an Axe shower bag, inside of which was some marijuana and a Nintendo DS gaming system. (ECF No. 13-7 at 78-79.) The three intruders also seized a .38 caliber revolver, a Nintendo Wii gaming system, "a couple bowls" (for smoking marijuana), Correa's cellular phone, Correa's wallet, and several identification cards. (ECF No. 13-7 at 80, 84, and 88.)

Correa reported the incident to police, later testifying that the officers investigating the incident did not take the matter seriously. (ECF No. 13-7 at 94.) During this initial investigation Correa did not give law enforcement officers the name of any potential suspects. (ECF No. 13-7 at 93-94.) Correa later testified that he told Pedro and Bump that he "had a feeling" that James was one of the intruders. (ECF No. 13-7, at 96.)

James was wanted in connection with a separate matter, and approximately one month later, on March 2, 2011, Milwaukee police went to the residence of Natasha

Roche—James's girlfriend at the time—to check for James. (ECF No. 13-8 at 6-7.) Milwaukee Police officers Frank Vrtochnick and Librado Bracero testified that Roche consented to their entering and searching her residence for James. (ECF No. 13-8 at 7, 21.) Though not an exhibit in this record, several submissions to this court reference a 'consent form' that Roche apparently signed on March 2, evidencing her consent. (*See* ECF No. 13-3 at 9; ECF No. 1-1 at 13.) In the course of their search officers located a .38 caliber revolver, two identification cards (one of which belonged to Bump) and a black wallet. (ECF No. 13-8 at 10, 22.) Officers found James hiding in a cabinet beneath the kitchen sink. (ECF No. 13-8 at 20.)

On March 11, 2011, Milwaukee Police Officer Kevin Bolyard and Detective Ramona Ruud further investigated the January 27 robbery of Correa's apartment in connection with the items seized from Roche's residence on March 2. (ECF No. 13-8 at 30.) Bolyard testified that he interviewed and conducted a photo array with Correa because Correa had indicated that he might be able to identify one of the intruders. (ECF No. 13-8 at 32.) During the photo array Correa identified James as the intruder who had asked him "where the stuff was at." (ECF No. 13-8 at 38.)

Bolyard and Ruud then went to Roche's residence. (ECF No. 13-8 at 39.) Bolyard testified that Roche was cooperative and produced an Axe bag as well as a cellular phone. (ECF No. 13-8 at 40.) In a bedroom Bolyard found a scarf that Pedro identified at trial as being worn by one of the intruders on January 27, 2011. (ECF No. 13-7 at 125.)

3

On March 30, 2011, James was charged with armed robbery as party to a crime for the January 27, 2011 robbery. Wisconsin Circuit Court Access, Milwaukee County Case No. 2011CF00143, https://wcca.wicourts.gov/index.xsl (last visited Dec. 6, 2016). At James's preliminary hearing Correa testified that he recognized James during the January 27, 2011 home invasion by "his build and voice" and that "I known him for a while… I know him." (ECF No. 1-1 at 2.) Correa further stated:

> Q. Were the three suspects—Did they have masks or anything that concealed their face?
> A. Yes, ma'am.
> Q. They did?
> A. Yes, ma'am.
> Q. So you were unable to see the face of the person you identified as my client, correct?
> A. Yes, ma'am.

(ECF No. 1-1 at 3.) Correa later reiterated that he knew James: "I know him … If I known [sic] you for a couple months or a year or whatever and you came at me with a mask, I would know it was you." (ECF No. 1-1 at 3.)

Before trial James's attorney moved to suppress evidence recovered from Roche's apartment on the ground that Roche had not consented to the search. (ECF No. 13-4 at 3.) In support Roche signed an affidavit stating that she had not consented to the March 2 search and that the signature on the consent form was not hers. (ECF No. 1-1 at 13.) Roche appeared at the suppression hearing but left before testifying. (ECF No. 13-2 at 46.) The court rescheduled the motion for the morning of James's trial. (ECF No. 13-4 at 3, ¶ 4.) Although Roche was listed on James's trial witness list, James's attorney did

4

not subpoena her and she did not appear on the morning of trial. James's attorney stated that Roche's phone was disconnected and that the attorney did not know her whereabouts. (ECF No. 13-2 at 47.) The trial proceeded without Roche testifying. (ECF No. 13-8 at 3.)

At trial Correa testified that he recognized "[James's] face and his voice" during the robbery. (ECF No. 13-7 at 81.) Correa testified that "the bottom half" of James's face was covered by "a ski mask" but that he could see James's face "from the cheekbone up." (ECF No. 13-7 at 81-82.) Correa testified that he knew James and that James had been to Correa's residence. (ECF No. 13-7 at 82.) On re-direct examination Correa testified that he recognized James because of his voice and "upper face" because James had a birthmark underneath one of his eyes. (ECF No. 13-7 at 96.)

James's lawyer questioned Correa as to why he had not given James's name to police on the night of the robbery. (ECF No. 13-7 at 93.) She asked Correa why, if he recognized James's face and voice on January 27, he only "had a feeling" it was James who had robbed him. (ECF No. 13-7 at 97.) However, she did not try to impeach Correa with his preliminary hearing testimony nor did she draw attention to the fact that James does not have a birthmark under his eye. James did not testify. The jury returned a verdict of guilty. (ECF No. 13-9 at 7.)

James proceeded to appeal portions of his case and exhausted the issues he now raises before this court through proper state avenues.

## II.  Analysis

### Standard of Review

With the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), Congress dramatically changed the federal courts' role in reviewing the judgments of state criminal courts. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). Under 28 U.S.C. § 2254(d), a federal court may grant a writ of habeas corpus only when the state court's adjudication of the petitioner's claim on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "a state court decision is 'contrary to' federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06, 412-13 (2000)). As for the unreasonable application clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United

States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court's holding must provide a clear answer in the petitioner's favor. Novel arguments for the expansion of constitutional rights or arguments dependent upon the decisions of any court other than the United States Supreme Court do not merit federal habeas relief. *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015); *Renico v. Lett*, 559 U.S. 766, 779 (2010).

With regard to § 2254(d)(2), a state court's "decision 'involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949-50 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010)). A federal court is required to afford substantial deference to the findings and decisions of the state court. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court cannot grant a petitioner habeas relief merely because the state court's decision is incorrect; "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410) (emphasis in original). "Unreasonable" applications in state court decisions must be not merely wrong but so wrong that no reasonable judge could have reached that decision. *Woods,* 135 S. Ct. at 1376.

This substantial restraint upon the authority of federal courts is intended to "further the principles of comity, finality, and federalism." *Panetti v. Quaterman*, 551 U.S. 930, 945 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). "State courts are adequate forums for the vindication of federal rights" because state judges, like federal judges, have "the solemn responsibility … to safeguard constitutional rights." *Burt*, 134 S. Ct. at 15 (quoting *Trainor v. Hernandez*, 431 U.S. 424, 443 (1977)). Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

**James's Claims**

James's petition sets forth two grounds for relief. First, he claims he was denied his Fifth Amendment right to due process when the prosecution knowingly introduced allegedly perjured testimony from Correa. Second, James claims his Sixth Amendment right to effective assistance of counsel was violated when trial counsel (1) failed to compel Roche's attendance at trial and (2) failed to impeach Correa.[2]

i.  **Prosecutorial Misconduct.**

---

[2] James's petition also alleges: "trial counsel failed to conduct a reasonable pre-trial investigation." (ECF No. 1-2 at 3) His brief in support (ECF No. 18) however, subsumes this ground into his other two ineffective assistance claims. The court will thus resolve James's claims as developed in his brief.

Ground One of James's habeas petition alleges that Correa's preliminary hearing testimony conflicts with his trial testimony. Specifically, he contends that Correa's preliminary hearing testimony about being unable to see the faces of the intruders but being able to recognize James (who he knew) by "his build and voice" is inconsistent with Correa's trial testimony that, while the bottom half of James's face was covered, Correa could still see James's face "from the cheekbone up." (ECF No. 13-7 at 81-82.) Given this alleged inconsistency, James contends that Correa's trial testimony was perjury and that the prosecutor's use of it violated the Fifth Amendment.

The Wisconsin Court of Appeals dismissed this claim on the basis of Wisconsin law:

> James forfeited the right to appeal the [prosecutorial misconduct claim], however, because he did not object to [it] at trial. *See State v. Marinez*, 2011 WI 12, ¶ 49, 331 Wis.2d 568, 797 N.W.2d 399 ("A defendant who fails to object at the time of alleged errors by the prosecutor risks forfeiting review of such errors on appeal."). We will therefore discuss the errors James alleges regarding prosecutorial misconduct … in our analysis of whether trial counsel was ineffective. *See State v. Carprue*, 2004 WI 111, ¶¶ 47, 69, 274 Wis.2d 656, 683 N.W.2d 31.

(ECF No. 13-4 at 6.)

Where an appellate decision rests on an application of state law, federal court review is limited: "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule

is firmly established and consistently followed." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).

James argues that his claim should not be procedurally barred because the respondent has not shown that the state law ruling is both independent of federal law and adequate to hold the petitioner responsible for violating it.[3] He also alleges that the procedural default in question has not been regularly and consistently followed in previous cases in Wisconsin. James cites no case law to support his propositions.

In *State v. Marinez* (the case relied on by the Court of Appeals) the Wisconsin Supreme Court held:

> Initially, a defendant ought to contemporaneously object to any misuse of other acts evidence by a prosecutor to allow a circuit court the opportunity to correct any alleged errors during trial. *See State v. Doss*, 2008 WI 93, ¶ 83, 312 Wis. 2d 570, 754 N.W.2d 150. A defendant who fails to object at the time of alleged errors by the prosecutor risks forfeiting review of such errors on appeal. *Id.* That being said, 'some errors are so plain or fundamental that they cannot be waived' and will be considered on appeal despite the absence of an objection.

*Marinez*, 2011 WI 12 at ¶ 49 (quoting *State v. Davidson*, 2000 WI 91, ¶88, 236 Wis. 2d 537, 613 N.W.2d 606). *State v. Doss* (cited in *Marinez*) provides: "[by not objecting, petitioner] in essence conceded at trial that the [prosecutor's] commentary did not cross the line to such a degree that her constitutional rights were substantially infringed, requiring a curative instruction, let alone reversal." *Doss*, 2008 WI 93, at ¶ 83.

---

[3] The respondent only provided an answer in this case; no brief was submitted by the briefing deadline.

10
Case 2:15-cv-00717-WED    Filed 12/08/16    Page 10 of 19    Document 24

These cases show that a firmly established procedural rule in Wisconsin, sufficient to warrant dismissal, is that the failure to object at trial to prosecutorial misconduct may waive the ability to assert prosecutorial misconduct on appeal. Absent evidence that this Wisconsin rule is inconsistently followed, this court finds that the Wisconsin Court of Appeals relied on an adequate and independent state law ground when it dismissed James's prosecutorial misconduct claim. As such, James's Fifth Amendment claim is procedurally defaulted. *See Martinez*, 132 S. Ct. at 1316.

A procedural default, however, is not necessarily fatal to James's claim. "*Wainwright v. Sykes* held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier*, 477 U.S. 478, 485 (1986). If James can prove good cause for his procedural default, the court may be able to review his Fifth Amendment claim on its merits.

While James's pro se response brief does not directly address good cause, he consistently argued in the Wisconsin courts that his trial counsel was ineffective for failing to object to prosecutorial misconduct. (ECF No. 1-3 at 5, 17.) Thus, the court will construe James's argument to be that his counsel's errors constituted good cause for his procedural default.

"[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray*, 477 U.S. at 488 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Accordingly, if James cannot make out an ineffective assistance of counsel claim, he does not have good cause for his procedural default in the Wisconsin courts. And, because the state court relied on an adequate and independent state law ground to dismiss James's prosecutorial misconduct arguments, this court will be precluded from reviewing the merits of James's habeas petition on this ground. *See Harris v. Reed*, 489 U.S. 255, 260 (1989). Thus, this court's analysis arrives at the same place as did the Wisconsin Court of Appeals: whether James's counsel's failure to object to alleged prosecutorial misconduct constituted ineffective assistance of counsel.

### ii. Ineffective Assistance of Counsel

"In all criminal prosecutions, the accused shall enjoy the right to … have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary

12

to ensure that the trial is fair. For that reason, the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland*, 466 U.S. at 685-86.

Under *Strickland v. Washington*, to demonstrate a Sixth Amendment ineffective assistance of counsel claim James must show (1) his counsel's representation "fell below an objective standard of reasonableness" guided by the prevailing norms of the practice, and (2) he was prejudiced by the error such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 477 U.S. at 694. "Recognizing that '[t]here are countless ways to provide effective assistance in any given case,' we must indulge a strong presumption that counsel's representation falls within a wide range of reasonable representation; and it is, of course, the petitioner's burden to overcome that presumption." *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689-90).

**Failure to Object to Prosecutorial Misconduct**

With regard to his attorney's failure to object to alleged prosecutorial misconduct, James can only prove deficient performance by his attorney if such an objection would have had merit. "Obviously, an attorney is not constitutionality [sic] deficient for failing to lodge a meritless objection." *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010). To prevail on a prosecutorial misconduct objection James must establish that the prosecution knowingly used perjured testimony. *United States v. Adcox*, 19 F.3d 290, 295 (7th Cir. 1994) (citing *Napue v. Illinois*, 360 U.S. 264, 269-71

(1959)). "[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation. 'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) (quoting *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)).

The Wisconsin Court of Appeals found that any objection for prosecutorial misconduct would have been overruled because Correa's trial testimony was not inconsistent with his preliminary hearing testimony. (ECF No. 13-4, at 8.) In essence the Court of Appeals concluded that Correa's trial testimony did not directly contradict, but expanded upon, his preliminary hearing testimony. Because an objection would have been meritless, trial counsel was not ineffective for failing to raise it. (ECF No. 13-4 at 9, *citing State v. Berggren*, 2009 WI App 82, ¶ 21, 320 Wis. 2d 209, 769 N.W.2d 110.)

This court agrees. Correa's trial testimony was merely a more detailed, complete version of his preliminary hearing testimony. And even if the court were to conclude that the two versions offered by Correa were inconsistent, mere inconsistencies do not prove that the prosecution knowingly used perjured testimony. *Adcox*, 19 F.3d at 295. Absent evidence that the prosecution knowingly used perjured testimony (and James offers none), an objection for prosecutorial misconduct would have been meritless. As such, James's counsel was not ineffective for failing to raise such an objection. *See Boatwright*, 594 F.3d at 561.

**Failure to Subpoena Roche**

James argues that his lawyer fully understood the importance of Roche's testimony but failed to subpoena her to testify at the evidentiary hearing. James characterizes Roche as "a favorable witness who could've resolved the circumstantial issue of how the victims' property came to be in her residence… ." (ECF No. 18 at 21.) James contends that with Roche's testimony the evidence seized from her apartment would have been excluded from trial. And even if no evidence was excluded, Roche's testimony about the victims' property would have undermined the credibility of the State's case. (ECF No. 18.)

Without addressing whether the failure to subpoena Roche constituted deficient performance, the Wisconsin Court of Appeals held that James was not prejudiced by the failure to subpoena Roche:

> Specifically, James argues that trial counsel was ineffective for failing to subpoena Roche for the rescheduled hearing date. James does not, however, provide any basis for us to conclude that had trial counsel subpoenaed Roche, she would have testified consistently with her affidavit instead of the consent form, which does appear to be signed by Roche, and which is consistent with the officers' testimony that Roche voluntarily consented to the search of her apartment. Therefore, James cannot show prejudice and cannot show that trial counsel was ineffective.

(ECF No. 13-4 at 11.)

It is undisputed that Roche left the suppression hearing before testifying and apparently disconnected her telephone shortly thereafter. (ECF No. 13-2, at 25; 13-3, at 22-23.) Nevertheless, James wants the court to assume that, had Roche been

subpoenaed, she would have appeared at trial to testify. But he offers no evidence to support such conjecture. Given Roche's apparent reluctance to be involved, there is good reason to question that assumption.

Beyond that, even if Roche had complied with a subpoena and appeared on the first day of James's trial, the court of appeals correctly noted that James provides no basis for concluding that Roche's testimony would have been consistent with her affidavit—that is, that she would have testified that she did not consent to the search of her apartment. And even if she *did* testify that she did not consent, James does not show that her consent was necessary for officers to search her residence. Rather, the facts demonstrate that officers went to Roche's residence for the sole purpose of looking for a subject (James) who was wanted on an arrest warrant . (ECF Nos. 13-8 at 19; 13-8 at 8.) Under such circumstances, they were entitled to search for James there—with or without her consent. *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009) (law enforcement officers do not need a search warrant in addition to an arrest warrant to enter a third party's home to effect an arrest) (citing *Payton v. New York*, 445 U.S. 573, 603 (1980) (an arrest warrant "carries with it the limited authority to enter a dwelling when there is reason to believe the suspect is within.")).

In addition, to the extent Roche would have testified that James had nothing to do with Correa's wallet and the identification cards being found in her apartment, that testimony was already introduced at trial. Officer Bracero testified that Roche told him

that she had found the wallet, inside of which were the identification cards. (ECF No. 13-8 at 21-22.) With this testimony already before the jury, Roche was not needed to establish James's contention that he had not taken these items from Correa and Bump.

In short, this court cannot conclude that James has shown a Sixth Amendment violation or that the decision of the court of appeals resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

**Failure to Impeach Correa**

James also alleges that his trial counsel was ineffective for not adequately challenging Correa's credibility and for failing to point out that James does not have a birthmark under his eye. As to this claim the Wisconsin Court of Appeals found:

> [James] claims that trial counsel should have impeached Correa's testimony that he recognized a "birthmark" under James's eye because James has no such birthmark. James cannot prove prejudice, however, because James appeared in front of the jury at trial. The jury saw James and his birthmark (or lack thereof) for itself, and counsel was not ineffective for failing to draw attention to it. *See State v. Maloney*, 2004 WI App 141, ¶ 23, 275 Wis. 2d 557, 685 N.W.2d 620 (counsel's strategic decisions are "virtually unassailable"). James also argues that trial counsel failed to present allegedly "inconsistent statements" that Correa made regarding his identification of James as one of the individuals who robbed him. This is little more than a rehash of his earlier arguments, however, and we consequently will not consider it. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis.2d 555, 564, 261 N.W.2d 147 (1978).

(ECF No. 13-4, at 12-13.)

As for the so-called inconsistencies between Correa's preliminary hearing testimony and his trial testimony, Correa's statements explain *how* he was able to

17
Case 2:15-cv-00717-WED   Filed 12/08/16   Page 17 of 19   Document 24

identify James on the night of January 27, 2011. At the preliminary hearing he said it was through James's "build and voice" and at trial he testified that it was through his "face and voice". And on both occasions Correa said that he recognized James because he knew him. This latter testimony is unchallenged by James's petition and provides an independent explanation as to how it was that Correa recognized James. Moreover, before he testified at the preliminary hearing, Correa identified James during the photo array conducted by Officer Bolyard. As a result, even if the court accepts James's assertion that there were inconsistencies between Correa's preliminary hearing testimony and his trial testimony, James has not alleged facts which undermine Correa's positive identification as a whole.

As for trial counsel's failure to point out that James does not have a birthmark on his cheek, James does not explain why the jury would not already have considered that evidence, given that James appeared in front of them at trial. While directing the jury's attention to the absence of a birthmark on James's cheek may have been good advocacy, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

Moreover, James ignores the cross-examination that his counsel *did* perform of Correa. James's counsel pointed out to the jury that, although Correa testified that he knew one of the intruders was James, he never told that key fact to the police officers who originally investigated the robbery. (ECF No. 13-7, at 92-95; 97-98.) While she

perhaps could have pursued other avenues of impeachment, James's counsel did not abdicate the task of cross-examination as James suggests when he says that "Counsel allowed for [Correa's] credibility to be unchallenged." (ECF No. 1-2 at 4).

Thus, James does not convince this court that the outcome of his trial would have been any different had his lawyer cross-examined Correa differently. James has not sufficiently stated a Sixth Amendment violation because he has not shown that he was prejudiced by his counsel's representation.

In sum, because none of James's ineffective assistance of counsel claims demonstrate a Sixth Amendment violation, Ground Two of James's petition for relief under 28 U.S.C. § 2254(d) is **denied.** And, given this shortcoming, James has not shown good cause for the procedural default on Ground One of his petition. Ground One is thus precluded from federal habeas review.

**IT IS THEREFORE ORDERED** that James's petition for writ of habeas corpus is **denied.**

Dated at Milwaukee, Wisconsin this 8th day of December, 2016.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge